

# NUMBER 13-17-00692-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**DERRICK BERNARD GILDON,**                                                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                            **Appellee.**

## On appeal from the 24th District Court
## of Calhoun County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

In a bench trial, the trial court convicted appellant Derrick Bernard Gildon of aggravated assault with a deadly weapon, a second-degree felony, and sentenced appellant to sixteen years' confinement. By one issue, appellant contends that the evidence is insufficient to support the finding that the knife he allegedly used is a deadly weapon. We affirm.

## I.    BACKGROUND

On September 2, 2016, Calhoun County Deputy Sheriff Jason Ellis was dispatched to the residence shared by appellant and his ex-wife, Tracy Larese Larkins, for an assault that had taken place. Deputy Ellis testified that he photographed Larkins's injuries. Deputy Ellis identified State's exhibit 1 as a picture of the knife that appellant allegedly used during the assault. The knife including its handle appears to be almost as large as the sink. The blade has a jagged edge, and it appears to have a very sharp point. The sharp edge of the knife is longer than the handle.

Larkins stated that, on the evening of the incident, appellant was drunk and the couple began arguing. Larkins explained that once the argument became too heated, she decided to leave, but appellant would not allow her to leave. According to Larkins, appellant told her, "I'm 215 pounds, you cannot move me if you wanted to" as he blocked her bedroom door. Larkins testified that she was scared to be alone in the bedroom with appellant, and she attempted to push him so that she would be able to leave the bedroom. Larkins explained that appellant continued to block the doorway, and she decided to leave the bedroom by exiting out another door. According to Larkins, appellant anticipated her plan, and he attempted to block her from exiting and pushed her. Larkins said that she "hit the corner" of a table, and she pushed him back. According to Larkins, she ran out the door, and appellant chased after her. Larkins explained what followed:

> We ended up right there by the kitchen. And there was a knife, it was one of our biggest knives we had, and he turns around and I'm right here and he says—he grabs that knife and he pulls it up like this and he says you want somebody dead, don't you, I told you one day you were gonna hate me and all this stuff, like I'll show you how to kill somebody. And he had that knife up to my neck, I can feel the blade and everything and I'm just like, oh, my gosh, because at one point he put it in my hand. I threw it in the sink and that's how it ended up right here. But he was just saying all

2

this crazy stuff that just didn't make any sense, like I'm not understanding, like I'm scared, I mean I'm going through all these different emotions, I'm like why is he doing this, you know, he's . . . .

Larkins clarified that after she threw the knife in the sink, appellant picked up the knife and threatened her with it. Larkins testified that she ran to her son's room, and told him what had happened. Larkins said that appellant threw the knife in the sink, she went outside, and she called 911. The prosecutor asked Larkins if she felt that her life was in danger when appellant had the knife, and Larkins replied, "Oh, yeah, because I know how he is. I know how Derrick is, is that when he put that knife in my hand I threw it in the sink. He picked it up. For him to put the knife at my hand he wants me to, you know, try to attack him so he can give—so he has cause to harm me."

On cross-examination, Larkins stated that the knife appellant used during the incident, "was one of the biggest knives we had in the house," and on re-direct examination by the State, she identified the knife in the sink as the knife appellant used. After the State re-called Larkins to the stand, Larkins agreed that appellant held a knife to her throat and threatened her with bodily injury. The State asked, "How did he do that," and Larkins responded, "With a knife." The State asked Larkins "what did he say to threaten you with bodily injury?" Larkins replied, "He said I'll show you how to kill somebody and he just said all types of different things. It wasn't just I'll show you how to kill somebody, he says I love you too much to walk away from you, I'll see you dead, a lot of different statements with a knife."

Robert Estraca, Larkins's seventeen-year-old son, testified that Larkins awoke him on the night of the incident stating that appellant was "trying to kill" her. Estraca stated

3

that Larkins had mentioned the knife to him, he looked in the sink and "there was just a kitchen knife."

Appellant testified that Larkins prevented him from leaving the bedroom, that she shoved him, that he hit the table, and that she pushed him. According to appellant, Larkins began hitting him, he attempted to go outside, and Larkins did not "want to let [him] move." Appellant stated that Estraca came out of his room, stood between appellant and Larkins, and Larkins threatened to kill appellant "about a half a dozen" times. Appellant testified that Larkins reached in the sink attempting to get the knife, and "[w]hen she did that, before she can come out of the sink with the knife [appellant] reached in there and [he] grabbed it and [he] took the knife away from her. . . ." When his trial counsel asked if he threatened Larkins with the knife, he replied, "No."

The trial court found appellant guilty of the offense, and this appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In a sufficiency review, we examine the evidence in the light most favorable to the prosecution to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010). The fact-finder is the exclusive judge of the facts, the credibility of witnesses, and of the weight to be given testimony. *Brooks*, 323 S.W.3d at 899. We must resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234,

4

240 (Tex. Crim. App. 1997)).  A person commits aggravated assault if the person commits an assault as defined in section 22.01 of the penal code, and the person causes "serious bodily injury to another . . . or uses or exhibits a deadly weapon during the commission of the assault."[1]  TEX. PENAL CODE ANN. § 22.02(a) (West, Westlaw through 2017 1st C.S.).

Here, appellant allegedly committed aggravated assault while using or exhibiting a deadly weapon, a knife.[2]  *See id.*  The applicable definition of a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."[3]  *Id.* § 1.07(a)(17)(B) (West, Westlaw through 2017 1st C.S.).  "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  *Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008).  However, "[t]he State is not required to show that the 'use or intended use causes death or serious bodily injury' but that the 'use or intended use is capable of causing death or serious bodily injury.'"  *Id.*

### III.    ANALYSIS

---

[1] Section 22.01 of the penal code provides that a person commits assault if the person: "(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."  TEX. PENAL CODE ANN. § 22.01(a) (West, Westlaw through 2017 1st C.S.)

[2] A knife is not a deadly weapon per se.  *McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000).  Thus, the State does not prevail simply by proving that a knife was used.  *See id.*  Instead, the State must prove that the knife was a deadly weapon as defined above.  *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West, Westlaw through 2017 1st C.S.).

[3] The penal code also defines a deadly weapon as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury."  *Id.* § 1.07(a)(17)(A) (West, Westlaw through 2017 1st C.S.).

5

The trial court, as the trier of fact, saw a picture of the knife used by appellant during the incident, which has a long and jagged blade with a sharp tip. Larkins testified that appellant threatened to kill her while holding the knife to her throat, and she feared for her life. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the knife used by appellant was capable of causing death or serious bodily injury. *See Jackson*, 443 U.S. at 319; *see also Brooks*, 323 S.W.3d at 898–99; *Rivera v. State*, 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.) ("The State may establish the knife was capable of causing death or serious bodily injury through witnesses' descriptions of the knife's size, shape, and sharpness; testimony of the knife's life-threatening capabilities; the manner in which the knife was used; the words spoken by the defendant; the physical proximity between the victim and the knife; and the nature of any wounds caused by the knife."). We overrule appellant's sole issue.

## IV. CONCLUSION

We affirm the judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed this
7th day of June, 2018.

6